IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DWAYNE PIPKINS and MARILYN
PIPKINS,** *as parents of D.P. next
friend D.P.,*

       Plaintiffs,

       vs.                        **No. 2:12-CV-00205-MCA-WPL**

**BOARD OF EDUCATION OF
RESERVE INDEPENDENT SCHOOL
and NEW MEXICO PUBLIC
EDUCATION DEPARTMENT,**

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *New Mexico Public Education*

*Department's Motion and Memorandum for Partial Dismissal of Plaintiffs' Complaint*

[Doc. 26].  Having considered the submissions, the relevant case law, and otherwise

being fully advised in the premises, the Court denies the motion.

**I.**      **BACKGROUND AND PROCEDURAL HISTORY**

Dwayne and Marilyn Pipkins (Plaintiffs), the parents of minor child D.P., filed the

present *Complaint Pursuant to Individuals with Disabilities Education Act and For*

*Discrimination on the Basis of Disability* against Defendants Board of Education of

Reserve Independent School (Reserve) and New Mexico Department of Public Education

(NMPED) on February 29, 2012. [Doc. 1] Plaintiffs allege that: (1) they are entitled to an

award of reasonable attorneys fees and costs against Reserve under the Individuals with

Disabilities Education Act (IDEA) because they were the prevailing parties in the

administrative Due Process Hearing;[1] (2) the "Decision of the Due Process Hearing

Officer Denying Petitioners' Motion to Proceed with a Due Process Hearing Against the

New Mexico Public Education Department" should be reversed, because NMPED was

required "to act under 21 U.S.C. § 1413(g)(1)(B) or (D) to provide remedy and FAPE

[free appropriate education] to D.P." [Doc. 1 at 6]; and (3) both Reserve and NMPED

have violated and continue to violate D.P.'s right to the receipt of public education free

from discrimination on the basis of disability in violation of Section 504 of the

Rehabilitation Act and Title II of the ADA. [Doc. 1 at 15] In their Prayer for Relief,

Plaintiffs seek the following remedies: (1) reversal of the Due Process Hearing Officer's

"conclusion that NMPED is not responsible for past denial of FAPE, [and]

implementation of remedy and ongoing provision of FAPE to D.P.";[2] (2) declaratory and

injunctive relief against Reserve and NMPED "to remedy past and ongoing

discrimination against D.P. on the basis of disability in delivery of public education;" (3)

---

[1] On January 22, 2013, the parties filed a *Notice of Rule 41(A)(1)(ii) Voluntary Dismissal With Prejudice of Plaintiffs' IDEA Attorneys Fee Claim Against Defendant Board of Education of the Reserve Independent School District*, which gave "notice of the voluntary dismissal with prejudice" of Plaintiffs' IDEA "claim for attorney fees and costs incurred as against Defendant Reserve Independent School District in the administrative proceeding below." [Doc. 49]

[2] In the alternative, Plaintiffs ask this Court to "consider additional evidence in addition to the present record and reverse as to the conclusion that NMPED is not responsible for past denial of FAPE to D.P., implementation of IDEA remedy ordered and/or ongoing provision of FAPE to D.P." [Doc. 1 at 15-16]

monetary damages against Reserve and NMPED for their discrimination against D.P. on the basis of disability in the delivery of public education; (4) an award of attorney fees against both Reserve and NMPED under the IDEA "for the administrative hearing process work"; (5) an award of reasonable attorneys fees "under IDEA and/or Section 504 for work done in pursuit of this lawsuit"; (6) an award of costs; and (7) such other relief that the Court deems equitable.  [Doc. 1 at 15-16]

The *Complaint* alleges the following relevant facts.  "D.P. is ten years old" and he "is a child with a disability under IDEA, and a person with a disability under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act." [Doc. 1 at 2] "Plaintiffs live within the boundaries of the Reserve Independent School District in Reserve, New Mexico." [Id.] On October 3, 2011, Plaintiffs filed a Request for an IDEA due process hearing against both Reserve and NMPED. [Id. at 3] However, NMPED "refused to appoint a due process hearing officer to hear Plaintiffs' claims against the NMPED." [Id.]

"On November 14, 15 and 16, 2011 the IDEA due process hearing officer conducted an evidentiary hearing on Plaintiffs' claims against Reserve in Reserve, New Mexico." [Id. at 4-5]

> During the hearing, Plaintiffs reiterated claims against NMPED and indicated intent to seek relief requiring NMPED's involvement in remedy for D.P. and a separate evidentiary hearing against NMPED.  As part of post-hearing submissions, Plaintiffs filed a Motion requesting the Due Process Hearing Officer to conduct a due process evidentiary hearing against NMPED.  The Hearing Officer denied Plaintiffs' motion by separate decision and order dated January 30, 2012.

3

[Id. at 5]  With respect to Reserve, the Due Process Hearing Officer determined that "D.P. was denied a free appropriate public education by Reserve during the 2010-2011 and portion of the 2011-2012 school year."  [Id. at 7]

The Pending Motion to Dismiss

Plaintiffs timely filed their *Complaint Pursuant to Individuals with Disabilities Education Act and For Discrimination on the Basis of Disability* in this Court.  On August 8, 2012, NMPED filed *New Mexico Public Education Department's Motion and Memorandum for Partial Dismissal of Plaintiffs' Complaint* [Doc. 26].  NMPED contends that Plaintiffs' IDEA claim should be dismissed for failure to state a claim upon which relief can be granted pursuant to Chavez ex rel. M.C. v. New Mexico Pub. Educ. Dep't., 621 F.3d 1275 (10th Cir. 2010).  In Chavez, our Tenth Circuit Court of Appeals held that a State Education Agency (SEA), like NMPED, "is not required by the IDEA to provide services directly to a child where the [Local Education Agency (LEA)] fails to do so." [Doc. 26 at 5]  Accordingly, an SEA "which is not involved in the actual provision of a disabled child's individualized education program ("IEP"), [is] exempt from the administrative process, and thus properly excluded from proceedings meant to address subjects related to the direct education of a student." [Id. at 6] Because NMPED did not provide direct educational services to D.P., NMPED contends that Plaintiffs' IDEA claim must be dismissed.

Plaintiffs respond that the "IDEA clearly contemplates that Parents will have IDEA claims against the State Educational Agency." [Doc. 28 at 4] They contend that

their IDEA claim against NMPED cannot be "extinguished without ever receiving consideration by anyone." [Doc. 28 at 7] They further contend that Chavez does not support dismissal of their IDEA claim, because in Chavez "the Tenth Circuit specifically examined the issue of 'whether NMPED breached a duty to provide a FAPE to [Student] by directly providing him educational services.'" [Doc. 28 at 10]  Although the Tenth Circuit ultimately held that NMPED had not breached a duty to provide a FAPE under the IDEA, this "holding was totally dependent on the facts in the record and was not a legal ruling that an SEA could never be found responsible for direct services." [Doc. 28 at 11] Because an SEA's responsibility to provide FAPE under the IDEA is fact-dependent, Plaintiffs maintain that NMPED's motion to dismiss should be denied.

## II.   STANDARD

Under Fed. R. Civ.P. 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).  Further, in order to withstand a rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal citation omitted) (<u>Iqbal</u>).  If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed.  <u>Id.</u> at 680.

In handing down <u>Twombly</u>, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The <u>Conley</u> standard has proved problematic over the years because it suggests that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  <u>Twombly</u>, 550 U.S. at 561 (quoting <u>Conley</u>, 355 U.S. at 45-46).  As a result, defendants may be forced to bear the burden and expense of discovery before they are afforded a real opportunity to seek the dismissal of groundless claims, while plaintiffs may use the burdensome discovery process as leverage to induce otherwise unjustified settlement of such groundless claims.  <u>See</u> <u>Twombly</u>, 550 U.S. at 557-59.

A complaint is now subject to dismissal under the new standard if it does not "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  <u>Twombly</u>, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this*

6

plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge

at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

> Two "working principles" underlie the Twombly standard. Iqbal, 556 U.S. at 678.
> First, the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.  Threadbare
> recitals of the elements of a cause of action, supported by mere conclusory
> statements, do not suffice. . . . Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.  Determining
> whether a complaint states a plausible claim for relief will . . . be a context-
> specific task that requires the reviewing court to draw on its judicial
> experience and common sense.

Id. at 678-79 (internal citations omitted).  Thus, in order to evaluate a motion to dismiss,

the Court engages in a two-part inquiry by initially identifying those allegations that are

nothing more than legal conclusions and therefore "not entitled to the assumption of

truth" and then considering whether the factual allegations "plausibly suggest an

entitlement to relief."  Id. at 681.  Accordingly, the Court begins by evaluating the

elements of the pleaded cause of action, in order to determine whether the complaint

states sufficient factual allegations to implicate a claim for relief.  See id. at 674.

## III.   DISCUSSION

### A.   *IDEA*

"The IDEA provides federal funding to states to assist with the education of

disabled children on the condition that states comply with the Act's extensive goals and

procedures." Jefferson County Sch. Dist. R-1 v. Elizabeth E. ex rel. Roxanne B., 702 F.3d

1227, 1229 (10th Cir. 2012) (internal quotation marks and citation omitted).  "One of its

core purposes is to 'ensure that all children with disabilities have available to them a free

appropriate public education that emphasizes special education and related services designed to meet their unique needs.' 20 U.S.C. § 1400(d)(1)(A)." Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch., 565 F.3d 1232, 1236 (10th Cir. 2009).

"The primary tool in assuring that a free, appropriate public education ("FAPE") is provided to all eligible children with disabilities is the requirement that the state create an individualized education plan ("IEP") for each disabled child." Id. "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." Ass'n for Cmty. Living in Colo. v. Romer, 992 F.2d 1040, 1043 (10th Cir. 1993).

"When parents believe their child is not being provided a FAPE in the least restrictive environment, they are given 'an opportunity to present complaints with respect to any matter relating to the ... educational placement of the child, or the provision of a free appropriate public education to such child.' 20 U.S.C. § 1415(b)(6)." Miller ex rel. S.M., 565 F.3d at 1236. "After filing a complaint, they are entitled to an impartial due process hearing." Id. Any person aggrieved by the findings and decision of the due process hearing officer "shall have the right to bring a civil action" in state or federal court. 20 U.S.C. § 1415(i)(2)(A). In the civil action, the court (1) "shall receive the records of the administrative proceedings"; (2) "shall hear additional evidence at the request of a party"; and (3) "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)).

8

B.      *Materials Considered*

As a preliminary matter, the Court must determine what portions, if any, of the administrative record lodged with the Court may be considered in ruling on NMPED's motion to dismiss. [See Doc. 18]  "Generally, the sufficiency of a complaint must rest on its contents alone."  Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010).

> There are exceptions to this restriction on what the court can consider, but they are quite limited: (1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice . . .

Id. (internal quotation marks and citations omitted).  "If a district court intends to rely on other evidence, it must convert the Rule 12(b)(6) motion to a motion for summary judgment, giving proper notice to the parties. See Fed. R. Civ .P. 12(d)."  Id.

Plaintiffs' *Complaint* references the following documents in the administrative record: (1) NMPED's October 6, 2011 letter declining to appoint a due process hearing officer for Plaintiffs' IDEA claim against NMPED; (2) Petitioners' Motion to proceed with administrative Due Process Hearing on IDEA claims against the State Educational Agency; (3) New Mexico Public Education Department's Memorandum Regarding Jurisdiction; and (4) Decision of the Due Process Hearing Officer Denying Petitioners' Motion to Proceed with a Due Process Hearing Against the New Mexico Public Education Department. [Record Index Docs. 2, 16, 18 and 19]  The parties do not dispute the authenticity of these documents, which are central to Plaintiffs' IDEA claims. Furthermore, these documents are part of the administrative record and, therefore, they

constitute documents of which the Court may take judicial notice.  Accordingly, the Court may consider these documents in ruling on NMPED's motion to dismiss.

In a letter dated October 6, 2011, NMPED declined to appoint a due process hearing officer to hear Plaintiffs' claims against NMPED.  The letter explained as follows:

> Pursuant to 6.31.2.13(I)(3)(d) NMAC, the NMPED declines to appoint a hearing officer for the claims against it because an IDEA due process proceeding is not the appropriate forum for consideration of claims that do not relate to matters described in 34 CFR § 300.503(a)(1) and 6.31.2.13(I)(3) NMAC.  On October 8, 2010, the United States Tenth Circuit Court of Appeals clarified the jurisdiction of a due process hearing officer (DPHO) over claims against a state educational agency (SEA) when it held as follows: "We agree with NMPED that it, as the SEA not involved in the actual provision of M.C.'s IEP, was properly exempted from the administrative process.  Absent a determination that it was providing direct services to M.C., NMPED was not responsible for the matters covered by due process hearings." *Chavez v. NMPED*, 621 F.3d 1275, 1283 (10th Cir. 2010).  The Tenth Circuit went on to state that ". . . what matters for purposes of the DPHO's jurisdiction is whether NMPED actually *was* providing direct services." *Id.* (emphasis in original).  Therefore, the Tenth Circuit has made it very clear that merely claiming that the SEA should be providing direct services is not sufficient for a DPHO to exercise jurisdiction over the SEA since there must be a showing that the SEA was providing direct services at the time the complaint was filed.  The complaint filed by Mr. and Mrs. Pipkins does not allege that NMPED was providing direct services to the student.  6.31.2.13(I)(3)(d) NMAC, which was cited by the court in *Chavez*, is a valid rule and remains in full force and effect.  Given the present posture of the law, the parties are cautioned that a district court may award reasonable attorney fees to an SEA against an attorney of a parent who files a complaint that is frivolous, unreasonable or without foundation or was presented for any improper purpose such as to harass. *See* 34 CFR § 300.517(a).

[Record Index, Doc. 2]

On January 12, 2012, Plaintiffs filed *Petitioners' Motion to proceed with*

*administrative Due Process Hearing on IDEA claims against the State Educational Agency*. [Record Index, Doc. 16] Plaintiffs argued that <u>Chavez</u> was distinguishable from the present case and that "the NMPED has always (both historically and currently) evaded requests for due process hearings against the SEA by refusing to assign a due process hearing officer, leaving families and students without administrative remedy against the SEA in New Mexico." [<u>Id.</u> at 2]

The Due Process Hearing Officer denied Plaintiffs' "motion, concluding that under established law in the Tenth Circuit, the hearing officer lacks jurisdiction to consider Parents' IDEA claims against NMPED." [Record Index, Doc. 19] The Due Process Hearing Officer pointed out that "Reserve Independent School District is capable of implementing a remedy for student," but "[e]ven if Parents had established that the District could not provide a remedy for Student, the hearing officer would not have jurisdiction over the NMPED." [<u>Id.</u> at 3] The Hearing Officer explained that "<u>Chavez</u> holds that it is the district court which has authority to order the SEA to provide services to a child in an appropriate case.  It is the district court as well which has the authority to order the State to provide financial assistance to a district struggling to serve a child with particularly complex needs." [<u>Id.</u> at 3-4]

In their *Complaint Pursuant to Individuals with Disabilities Education Act and For Discrimination on the Basis of Disability*, Plaintiffs allege that the decision of the Due Process Hearing Officer should be reversed, because NMPED was required "to act under 21 U.S.C. § 1413(g)(1)(B) or (D) to provide remedy and FAPE [free appropriate

education] to D.P." [Doc. 1 at 6]   NMPED moved to dismiss Plaintiffs' *Complaint*, alleging that the Due Process Hearing Officer properly concluded that it lacked jurisdiction over NMPED pursuant to Chavez. [Doc. 26]

C.      *Chavez*

In Chavez, our Tenth Circuit Court of Appeals addressed the role of an SEA, like NMPED, in the provision of FAPE under the IDEA.  In that case, the parents of M.C. (parents) filed a due process complaint against the LEA, Tularosa Municipal Schools, and the SEA, NMPED, for violations of the IDEA and the Rehabilitation Act.  621 F.3d at 1278.  NMPED appointed a Due Process Hearing Officer (DPHO) to hear the parents' claims against Tularosa, but refused to appoint a DPHO to hear the parents' claims against NMPED.  The DPHO found that Tularosa had denied M.C. a FAPE during the 2003-04 and 2004-05 school years and that NMPED was not properly before it.  The plaintiffs and Tularosa appealed to an Administrative Appeal Officer (AAO).  "The parents challenged the DPHO's decision to exclude NMPED from the administrative proceedings and certain aspects of the remedy, and Tularosa contested the determination that it had denied M.C. a FAPE."  Id. at 1278-79.  The AAO "generally affirmed the DPHO's decision and agreed that Tularosa had failed to provide M.C. educational services since October 2003."  Id. at 1279.  The AAO also "agreed with the DPHO that NMPED should not be part of the administrative proceedings" and further determined that "[a]t this time it appears that [Tularosa] can implement the remedy ordered by the [AAO] for [M.C.]."  Id. (Internal quotation marks and citation omitted).

The parents filed a complaint in federal district court against both Tularosa and NMPED.  "As for NMPED, the parents alleged that it was directly responsible for the provision of education to M.C., pursuant to 20 U.S.C. § 1413(h)(1) and 34 C.F.R. § 300.360."  Id.  In addition, they "alleged that NMPED failed to offer appropriate placements for M.C. and other children with autism" and that "NMPED failed to enforce the IDEA by supporting Tularosa's refusal to develop an appropriate program for M.C." Id.  The district court held that "NMPED denied M.C. a FAPE by failing to provide direct services to M.C. as required by the IDEA . . . but declined to intervene in the state's provision of educational services and to order systemic relief."  Id.  Both parties timely appealed to the Tenth Circuit Court of Appeals.

The Tenth Circuit first addressed NMPED's argument that the parents were not aggrieved by the decision of the AAO because "the AAO held in their favor on their claims against Tularosa."  Id. The Court noted that the "parents sought liability against NMPED both because NMPED denied M.C. a FAPE" and because "it failed to monitor whether students like M.C. were receiving a FAPE and did not provide training for staff to ensure that autistic students received the appropriate continuum of alternative placements so that students received a FAPE."  Id. at 1280.  Therefore, "parents sought additional liability and relief from NMPED beyond what they sought (and received) in the administrative process against Tularosa."  Id.  Additionally, "the parents' theory of liability was not beyond the pale–states may be held responsible for failing to provide services to disabled children."  Id.  "By its failure to address their claims, the parents

13

could be considered 'aggrieved' by the administrative process implemented by the DPHO and AAO." Id.  Regardless, the Court noted that "[e]xhaustion of administrative remedies as a predicate for a federal-court action is not required if exhaustion would be futile or fail to provide adequate relief." Id.  Because NMPED had "successfully avoided the administrative process despite the parents' attempts to add it as a party," the Court held that "the parents sufficiently attempted to exhaust their claims to open the federal courthouse doors" "regardless of whether they were aggrieved by the administrative process." Id. at 1281.

Having determined that parents were properly before the district court, the Tenth Circuit next addressed the DPHO's authority to hear administrative claims against NMPED.  The Court noted that "[t]he IDEA regulations define not only who is subject to administrative hearings but also the subject matter addressed at those hearings." Id. at 1282.  Title 20 of the United States Code, section 1415(b)(3), (6) defines the scope of a DPHO's authority and it provides that the DPHO may address "*any matter* relating to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education to such child." Id. (quoting 20 U.S.C. § 1415(b)(3),(6)) (emphasis in original).  The Court observed that "the statutory and regulatory terms 'identification, evaluation, or education placement of the child, or the provision of a free appropriate public education to such child' are related to the adequacy of a child's education program as defined by his IEP which is developed by local educators, the child's parents, or other relevant specialists." Id.  NMPED, however, "was not directly

involved in the development of M.C.'s IEP."  Id. at 1283.

Based on the foregoing, the Court held that an SEA not involved in the actual provision of direct services is properly exempted from the administrative process.  Thus, "[a]bsent a determination that it was providing direct services to M.C., NMPED was not responsible for the matters covered by due process hearings."[3]  Id.  Although the Court proceeded to consider "whether NMPED should have been providing direct education services to M.C. sometime during the IDEA process, what matters for purposes of DPHO's jurisdiction is whether NMPED actually was providing direct services."  Id.  The Court recognized that

> this conclusion is somewhat unsatisfying, given that, as we describe below, it is the SEA itself that decides whether it should be providing direct services.  That said, but, given the policy implications of requiring the SEA to intervene in all disputes when the parents claim the LEA is not providing their child a FAPE, we hold that the SEA need not have been part of the administrative process here and reverse the district court on this issue.

---

[3]In a footnote, the Court observed the following:
Effective June 2007, to conform with the 2004 re-authorization of the IDEA, New Mexico amended its administrative code to exclude from the IDEA administrative process "claims asserting that the department should be required to provide direct services to a child with a disability pursuant to 20 USC Sec. 1413(g)(1) and 34 CFR Sec. 300.227 because the responsible public agency is unable to establish and maintain appropriate programs of FAPE, or that the department has failed to adequately perform its duty of general supervision over education programs for children with disabilities in New Mexico" and instead directed parties with those claims to proceed under the state-complaint procedures.  NMAC § 6.31.2.13(I)(3)(d) (2010); 6.31.2.7(B)(3) (department is defined as the 'public education department); N.M. Pub. Ed. Dept., Notice of Rule Making and Proposed Rules, 2007 N.M. REG TEXT 65879 (Feb. 28, 2007).
The Court notes that this regulation was in effect at the time that Plaintiffs' filed their request for a due process hearing in this case.

<u>Id.</u>

The Court next addressed whether NMPED had "breached a duty to provide a FAPE to M.C. by directly providing him education services." <u>Id.</u> The Court noted that this issue was "a matter of first impression in this circuit." <u>Id.</u> Title 20 of the United States Code, Section 1413(h) governs whether an SEA must directly provide a student a FAPE when an LEA is not providing one and it provides as follows:

(h) Direct services by State education agency

(1) In general. A state education agency shall use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities residing in the area served by that local agency, or for whom that State agency is responsible, if the State education agency *determines* that the local education agency or State agency, as the case may be-

(A) has not provided the information needed to establish the eligibility of such agency under this section.

(B) is unable to establish and maintain programs of free appropriate public education that meet the requirements of subsection (a) of this section;

(C) is unable or unwilling to be consolidated with one or more local educational agencies in order to establish and maintain such programs; or

(D) has one or more children with disabilities who can best be served by a regional or State program or service-delivery system designed to meet the needs of such children.

(2) Manner and location of education and services. The state educational agency may provide special education and related services under paragraph (1) in such manner and at such locations (including regional or State centers) as the State agency considers appropriate. Such education and services shall be provided in accordance with this subchapter.

20 U.S.C. § 1413(b) (emphasis added).  The Court assumed, without deciding, that the term "determining" means "finding out."  Id. at 1285.

The Court held that NMPED was not required to provide direct services to M.C. under Section 1413(b).  "Situations (A) and (C) are clearly not applicable and, NMPED did not either formally determine or "f[ind] out" that (B) a regional or state delivery system was necessary or (D) one or more students could best be served by a state or regional program."  Chavez, 621 F.3d at 1286.  As the district court concluded, after reviewing the administrative record and receiving further testimony at an evidentiary hearing, the LEA could, with professional help, provide a FAPE to M.C.  Id. Additionally, "revisions to the education services provided a student with disabilities are addressed through modifications of a child's IEP" and "the SEA cannot unilaterally change the IEP."  Id. at 1288.

> The SEA can, however, as the parents point out, order the IEP team to meet to develop a plan to provide a FAPE.  Given the central focus of the IDEA on the IEP and on the procedural mechanisms for addressing grievances through the IEP team and due process proceedings, it seems inconsistent with the statutory structure to allow the state to run roughshod over these procedures simply because parents contend that an IEP is not providing their child with a FAPE.

Id.  Although the Court held that NMPED was not required to provide educational services directly to M.C., it cited "with approval cases from other circuits holding that the state may still be financially responsible for an LEA's failure to provide a disabled child a FAPE."  Id. at 1289; see St. Tammany Parish Sch. Bd. v. Louisiana, 142 F.3d 776 (5th

Cir. 1998) (holding that an SEA may be held financially liable for an LEA's failure to

provide a free appropriate public education to a particular child within its jurisdiction)

Gadsby v. Gasmick, 109 F.3d 940, 952-53 (4th Cir. 1997) (same).  "In the case of the

IDEA it seems well-established that the parent corporation, the SEA, is indeed potentially

financially responsible for an LEA's failure to comply with its responsibilities, within the

broad discretion of a district court.  The SEA, however, is not required to take over

education directly."  Chavez, 621 F.3d at 1289.

        The Court recognized that there may be circumstances in which "the

administrative procedure extends, without interference by parents, until it becomes

apparent that the child is languishing due to unnecessary and excessive delay, so that the

state must act, especially when faced with a straightforward parental demand for SEA

intervention combined with an obvious failure of the system." Id. at 1290.  However, the

Court held that, even though M.C. was home-schooled for eighteen months and dropped

from the schools rolls, "[t]his is not quite that case." Id.  The Court cautioned, however,

that it did not "intend to signal state agencies that may routinely rely on procedural

requirements to insulate them from all liability, where the statutory remedies have run off

the rails." Id.

D.      *Analysis*

        Our Circuit held in Chavez that an SEA not involved in the actual provision of

direct services is properly exempted from the administrative process. Id. at 1283.

Plaintiffs' *Complain*t alleges that NMPED improperly failed to provide direct services to

D.P. in violation of Section 1413.  Because NMPED did not provide direct educational services to D.P., it was not responsible for any of the matters covered by the due process hearing.  Therefore, the Court concludes that the DPHO properly determined that it lacked jurisdiction over NMPED.

This does not end this Court's inquiry, however.  In Chavez, although NMPED was properly exempted from the administrative process, the Court nonetheless proceeded to consider the substantive question of "whether NMPED breached a duty to provide a FAPE to M.C. by directly providing him educational services."  Id.  The Court made it clear that the district court has the discretion to order an SEA to provide direct educational services to a student, as long as the stringent requirements of Section 1413(h) are met.  Even if the stringent requirements of Section 1413(h) are not met and the SEA is not required "to take over education directly," the district court nonetheless has "broad discretion" to hold an SEA "financially responsible for an LEA's failure to comply with its responsibilities."  Id. at 1289; see § 1415(i)(2)(C) (the district court "shall grant such relief as the court determines is appropriate").   Indeed, in Chavez the Court noted that it did not need to "remand for the district court to determine whether to require NMPED to reimburse Tularosa for [parents'] costs" because NMPED had already reimbursed Tularosa for "$146,0000 of the $165,000 it cost to educate M.C. while implementing the AAO's order" and the district court properly concluded that parents' costs of home-schooling M.C. lacked sufficient evidentiary support.  Id.

In the present case, the DPHO properly determined that "Chavez holds that it is the

19

district court which has authority to order the SEA to provide services to a child in an appropriate case.  It is the district court as well which has authority to order the State to provide financial assistance to a district struggling to serve a child with particularly complex needs." [Record Index, Doc. 19 at 3-4] NMPED is properly before this Court and this Court has the discretion under the IDEA to order NMPED to provide direct educational services to D.P. (so long as the stringent requirements of Section 1413(h) are met) or to reimburse Reserve for the costs of providing D.P. with a FAPE.  Accordingly, NMPED's motion to dismiss Plaintiffs' IDEA claim will be denied.

NMPED contends, however, that this Court cannot "hear issues not addressed by the DPHO" because "Plaintiffs' appeal to this Court is limited to review of the DPHO's finding" that it lacked jurisdiction over NMPED.  [Doc. 30 at 3] In support thereof, NMPED relies on 20 U.S.C. § 1415(i)(2)(A), which provides, in relevant part, that a "party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to *the complaint presented pursuant to this section*." (Emphasis added.).  NMPED's reliance on Section 1415(i)(2)(A) is misplaced. Plaintiffs repeatedly claimed in the administrative proceedings before the DPHO that NMPED was required to provide direct educational services to D.P.  Although the DPHO did not reach this issue, Plaintiffs' "sought additional liability and relief from NMPED beyond what they sought (and received) in the administrative proceedings below." Id. at 1280.  As the Tenth Circuit held in Chavez, this is sufficient for the Plaintiffs to "be considered 'aggrieved by the administrative process as implemented by the DPHO"

pursuant to Section 1415(i)(2)(A).  Id.  This Court concludes that it has the authority to consider Plaintiffs' IDEA claims against NMPED.

  **IT IS THEREFORE ORDERED** that *New Mexico Public Education Department's Motion and Memorandum for Partial Dismissal of Plaintiffs' Complaint* is **DENIED.**

  **SO ORDERED** this 19th day of September, 2013, in Albuquerque, New Mexico.


             _____

             M. CHRISTINA ARMIJO
             Chief United States District Judge